Sam E. McDOWELL, A. Joyce McDowell, Thomas L. Edwards, and Rayme Gardner Edwards, Petitioners,

v.

STATE of Alaska, Tesoro Alaska Petroleum Company, a Delaware corporation, John E. Cook, Carol A. Cook, and C & R Enterprises, d/b/a Sterling Tesoro Service Station, Respondents.

No. S–7559.

Supreme Court of Alaska.

April 25, 1998.

Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Sam E. McDowell, A. Joyce McDowell, Thomas L. Edwards, and Rayme Gardner Edwards.

Phillip Paul Weidner and Nicole D. Stucki, Weidner & Associates, Inc., Anchorage, for Sam E. McDowell and A. Joyce McDowell.

James E. Cantor, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for the State of Alaska.

Joseph R.D. Loescher, Hughes Thorsness Powell Huddleston & Bauman LLC, Anchorage, for Tesoro Alaska Petroleum Company.

Paul L. Davis and Ronald F. Black, The Law Offices of Paul L. Davis & Associates, Anchorage, for John E. Cook, Carol A. Cook, and C & R Enterprises.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Property owners filed suit alleging injuries to real property caused by petroleum contamination. The superior court dismissed the negligence and strict liability claims, on the ground they were barred by the two-year statute of limitations, AS 09.10.070. Because we conclude that these claims alleged "trespass upon real property" and were subject to the six-year statute of limitations, AS 09.10.050(2), we reverse and remand.

### II. FACTS AND PROCEEDINGS

Sam E. McDowell and A. Joyce McDowell own certain real property in Sterling.[1] Thomas L. Edwards and Rayme Gardner Edwards formerly owned real property in Sterling. John E. Cook and Carol A. Cook, and C & R Enterprises d/b/a Sterling Tesoro Service Station (Cooks) own and operate a service station near the McDowell and former Edwards properties. At some time, or over a period of time, petroleum spilled or leaked at the service station. The State of Alaska became involved in the remediation and cleanup of the spill or leakage. The

---

1. Because we are reviewing a partial summary judgment on a limitations issue, allegations about the petitioners' ownership of the property and the fact and source of contamination are accepted for purposes of discussion.

McDowells and the Edwardses (collectively McDowells) learned that there was contaminant migration from the service station, across the State highway, and onto their properties.

The McDowells filed a complaint against the Cooks, Tesoro Alaska Petroleum Company (Tesoro), and the State of Alaska. They alleged various causes of action in a complaint that they now claim asserted "primarily economic injuries as a result of the damage to and consequential restricted use and lowered value of their real property."[2] Count One claimed that Tesoro and the Cooks negligently breached their duty to operate their petroleum business so as not to damage the McDowells' property, and that this breach proximately caused the McDowells to suffer damages. Count Two claimed that the State of Alaska negligently breached the duty of conducting remediation and clean-up without damaging the McDowells' property, and that this breach proximately caused the McDowells to suffer damages. Count Three claimed that Tesoro and the Cooks were strictly liable in tort for the escape and migration of petroleum products that contaminated the McDowells' property.

The defendants sought summary judgment on the ground that the tort claims were barred by the two-year statute of limitations, AS 09.10.070. The superior court granted

partial summary judgment for the defendants, dismissing the McDowells' negligence and strict liability tort claims asserted in the first three counts of the complaint.

The McDowells filed a petition for review seeking reversal of the superior court's dismissal of their claims. We granted their petition in order to review the issue of the applicable period of limitations for negligence and strict liability actions that allege injury to real property.

## III. DISCUSSION

We must decide whether the six-year statute of limitations (AS 09.10.050) or the two-year statute of limitations (AS 09.10.070) applies to the McDowells' strict liability and negligence claims.[3]

The McDowells characterize their negligence and strict liability claims as "claim[s] for damages resulting from trespass to real property." They contend that damage to property sounds in "trespass" for purposes of AS 09.10.050(2), regardless of whether the property was harmed negligently or intentionally. Because their claims sound in trespass, they argue, this is an action for "trespass upon real property" and is therefore governed by AS 09.10.050(2).

---

2. Only Counts One, Two, and Three of the complaint are at issue. The McDowells' complaint also alleged claims for trespass, nuisance, breach of duty to disclose (State only), and breach of contract (State only), and sought punitive damages (Tesoro and Cooks only), and compensatory damages applicable to all counts.

3. The limitations statutes were revised in 1997. As this action accrued prior to 1997, we apply the pre-amendment statutes. As it read at the pertinent time, AS 09.10.050 provided:

> Unless the action is commenced within six years, *a person may not bring an action*
> (1) upon a contract or liability, express or implied, excepting those mentioned in AS 09.10.040; (2) *for* waste or *trespass upon real property;* or (3) for taking, detaining, or injuring personal property, including an action for its specific recovery.

Former AS 09.10.050 (emphasis added). As amended in 1997, AS 09.10.050 now states in its entirety, "Unless the action is commenced within six years, a person may not bring an action for waste or trespass upon real property."

AS 09.10.070(a) provided:
A person may not bring an action
(1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and *not* specifically provided otherwise; (2) upon a statute for a forfeiture or penalty to the state; or (3) upon a liability created by statute, other than a penalty or forfeiture; unless commenced within two years.

Former AS 09.10.070(a). As amended in 1997, the pertinent part of AS 09.10.070 now states:
(a) Except as otherwise provided by law, a person may not bring an action (1) for libel, slander, assault, battery, seduction, or false imprisonment[;] (2) for personal injury or death, or injury to the rights of another not arising on contract and not specifically provided otherwise; (3) for taking, detaining, or injuring personal property, including an action for its specific recovery ... unless the action is commenced within two years of the accrual of the cause of action.

We agree.[4]

In determining which statute of limitations applies, we look to the nature of the injury alleged, rather than to the technical cause of action.[5] *See, e.g., Breck v. Moore,* 910 P.2d 599, 603 (Alaska 1996); *see also Howell v. Ketchikan Pulp Co.,* 943 P.2d 1205, 1208 (Alaska 1997). Although the McDowells' technical causes of actions sound in negligence and strict liability, the nature of their injury is defendants' alleged interference with property rights. Interference with property rights is trespass. *See Black's Law Dictionary* 1502 (6th ed.1990) (defining trespass as "[a]n unlawful interference with one's person, property, or rights").[6] Because their claims allege an invasion of the McDowells' protected interest in exclusive possession, the "nature of the injury" of their claims sounds in trespass. The claims therefore should

have been subject to AS 09.10.050(2) as an action for "trespass upon real property."

Our conclusion that the McDowells' claims sound in trespass is consistent with the results reached in other cases, which have held that negligent contamination of real property is an injury to land in the nature of trespass. *See, e.g., Sterling v. Velsicol Chem. Corp.,* 647 F.Supp. 303, 319 (W.D.Tenn.1986) (stating that chemical company may be liable under common law negligence for trespass; reasoning that company's dangerous activity caused toxic substance to enter and harm plaintiffs' property), *aff'd in part and rev'd in part,* 855 F.2d 1188 (6th Cir.1988); *Martin v. Reynolds Metals Co.,* 221 Or. 86, 342 P.2d 790, 791–94 (1959) (stating that plaintiff landowner who alleged that airborne fluoride compounds emitted from defendant's aluminum reduction plant that settled upon and harmed plaintiff's land stated a claim for trespass); *Fortier v. Flambeau Plastics Co.,*

4. We exercise our independent judgment when interpreting and applying statutes of limitations. *See Pedersen v. Flannery,* 863 P.2d 856, 857 n. 1 (Alaska 1993). "When considering questions of law, we are 'not bound by the lower court's decision' and will 'adopt the rule of law that is most persuasive in light of precedent, reason, and policy.'" *Id.* (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

"In interpreting any statute, 'our primary guide is the language used, construed in light of the purpose of the enactment.'" *Alaska Hous. Fin. Corp. v. Salvucci,* 950 P.2d 1116, 1121 (Alaska 1997) (quoting *Commercial Fisheries Entry Comm'n v. Apokedak,* 680 P.2d 486, 489–90 (Alaska 1984)). We apply a "sliding scale approach" toward statutory interpretation. *Id.* (quoting *Peninsula Mktg. Ass'n v. State,* 817 P.2d 917, 922 (Alaska 1991)). "Under the sliding scale approach, the plainer the language of the statute, the more convincing contrary legislative history must be." *Marlow v. Municipality of Anchorage,* 889 P.2d 599, 602 (Alaska 1995) (citations omitted).

5. In this regard, our statute of limitations jurisprudence has evolved over the last twenty years. In *Van Horn Lodge,* we held that the limitation period depends on whether the gravamen of the plaintiff's complaint lies in tort or contract. *Van Horn Lodge, Inc. v. White,* 627 P.2d 641, 643 (Alaska 1981). In *Lee Houston,* we modified the gravamen analysis of *Van Horn Lodge* and "reexamine[d] the scope of the so-called 'tort' and 'contract' statutes." *Lee Houston & Assocs., Ltd. v. Racine,* 806 P.2d 848, 854–55 (Alaska 1991). As we stated recently, "Rather than attempting to characterize the source of the plaintiff's rights in terms of the common law distinctions between

tort and contract, we now look to the nature of the injury." *Breck v. Moore,* 910 P.2d 599, 603 (Alaska 1996); *see also Howell v. Ketchikan Pulp Co.,* 943 P.2d 1205, 1208 (Alaska 1997) (stating that nature of the injury determines whether the complaint sounds in contract or in tort).

6. *See generally* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 13, at 67 (5th ed. 1984) ("Historically, the requirements for recovery for trespass to land under the common law action of trespass were an invasion (a) which interfered with the right of exclusive possession of the land, and (b) which was the direct result of some act committed by the defendant."); *Restatement (Second) of Torts* § 165 (1986) cmt. c (stating that one who recklessly or negligently causes a person or thing to enter another's land is liable for trespass if the presence of the person or thing causes harm to the possessor's land or to a thing in whose security the possessor has a legally protected interest). *See also Wernberg v. Matanuska Elec. Ass'n,* 494 P.2d 790, 793 (Alaska 1972) (relying on *Restatement (Second) of Torts* §§ 165, 166); *Burt v. Beautiful Savior Luth. Church,* 809 P.2d 1064, 1067 (Colo.App.1990) (defining trespass as "the physical intrusion upon property of another without the permission of the person lawfully entitled to the possession of the real estate"); *Martin v. Reynolds Metals Co.,* 221 Or. 86, 342 P.2d 790, 794 (1959) (defining trespass as "any intrusion which invades the possessor's protected interest in exclusive possession"); *Hughes v. King County,* 42 Wash.App. 776, 714 P.2d 316, 318 (1986) (stating that negligent or intentional intrusion or some abnormally dangerous activity of the defendant may give rise to liability for trespass).

164 Wis.2d 639, 476 N.W.2d 593, 608 (Wis. App.1991) (holding that claims of unintentional intrusion of chemical compounds seeping into well water resulting from reckless or negligent conduct stated a claim for trespass); *see also Scribner v. Summers*, 84 F.3d 554, 558 (2d Cir.1996) (holding that metal treatment business was liable in trespass for contamination of adjacent property, based on intentional washing and demolishing of barium-tainted furnaces from which business had good reason to know or expect that waste water would transport barium particles to adjacent property); *Erceg v. Fairbanks Exploration Co.*, 95 F.2d 850, 856 (9th Cir.1938) (holding that action for damages for injuries created by the discharge of debris on gold mining claims was a "trespass to real property"); *Burt v. Beautiful Savior Luth. Church*, 809 P.2d 1064, 1067 (Colo.App.1990) (stating that the fact that the trespass action based on property damage due to leakage from improperly installed drainpipe may have been caused by a negligent act was irrelevant, and that liability for trespass requires only an intent to do the act that itself constitutes, or inevitably causes, the intrusion).

This conclusion is also consistent with previous statements by this court to the effect that tortious injury to real property is governed by AS 09.10.050(2). In *McKibben v. Mohawk Oil Co.*, 667 P.2d 1223, 1229 (Alaska 1983), we held that AS 09.10.050(2) applied to tortious injuries to real property. Plaintiffs there claimed defendants committed waste and conversion, engaged in unworkmanlike mining, and intentionally diluted the ore. *Id.* at 1227. We stated that the claims of intentional dilution and unworkmanlike mining were subject to AS 09.10.050 because they alleged injuries to "personal and real property." *Id.* at 1229. In *Lee Houston*, we noted that "[p]roperty torts are generally governed by AS 09.10.050." *Lee Houston & Assocs., Ltd. v. Racine*, 806 P.2d 848, 854 & n. 12 (Alaska 1991).

The State, Tesoro, and the Cooks argue that the McDowells' claims are really actions for "trespass on the case" that sound in tort and are therefore governed by AS 09.10.070.[7] They contend that the word "trespass" as used in AS 09.10.050(2) is a technical term, and therefore does not apply to the McDowells' claims. We disagree.

■ As an initial matter, the harm alleged in the McDowells' negligence and strict liability claims may be characterized as a direct invasion of their property rights. To the extent that "trespass on the case" implies an indirect invasion, the McDowells' action is not for "trespass on the case." *See Martin*, 342 P.2d at 797 ("Since the invasion in the instant case was direct it is not necessary for us to decide whether the distinction [between direct and indirect invasions] is recognized in [Oregon].").

■ More importantly, AS 09.10.050(2) does not necessarily distinguish between "trespass" and "trespass on the case." The historical origins of the words "trespass" and "trespass on the case" do not foreclose a conclusion that AS 09.10.050(2) encompasses negligence and strict liability actions based on injury to real property.[8] As the Oregon

---

7. The historical distinction between trespass and trespass on the case has been articulated as follows:

Trespass was the remedy for all forcible, direct and immediate injuries, whether to person or to property.... Trespass on the case, or the action on the case, as it came to be called, developed somewhat later, as a supplement to the parent action of trespass, designed to afford a remedy for obviously wrongful conduct resulting in injuries which were not forcible or not direct. The distinction between the two lay in the immediate application of force as to the person or property of the plaintiff, as distinguished from injury through some obvious and visible secondary cause.... The distinction was not one between intentional and negligent conduct. The emphasis was upon the

causal sequence, rather than the character of the defendant's wrong. Trespass would lie for all direct injuries, even though they were not intended, and the action on the case might be maintained for those which were intended but indirect.

Keeton, *supra* note 6, § 6, at 29–30.

8. We have recognized the distinction between "trespass" and "action on the case" in previous cases. *See, e.g., Kodiak Elec. Ass'n, Inc. v. DeLaval Turbine, Inc.*, 694 P.2d 150, 155 (Alaska 1984). The differences between these claims may be implicated when a plaintiff seeks to establish the requisite elements of a claim on the merits. The distinction between trespass and trespass on the case is not relevant, however, for purposes of determining which statute of limita-

Supreme Court has noted, "[t]he distinction between direct and indirect invasions where there has been a physical invasion upon the plaintiff's land has been abandoned by some courts." *Martin,* 342 P.2d at 797 (citations omitted). Rather than parse the historical distinctions between "trespass" and "trespass on the case," we look to the common usage of the term "trespass" as it is used in AS 09.10.050(2). As we stated in *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 905 (Alaska 1987) (citations omitted):

> The goal of statutory construction is to give effect to the legislature's intent, with due regard for the meaning the statutory language conveys to others. In this respect, we have repeatedly stated that unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage.

The term "trespass" is not defined by the statutes of limitations, nor have we had occasion to examine whether the term "trespass" as used in AS 09.10.050(2) reaches underground contamination that invades the rights of a property owner. Thus, the plain or common meaning of the term "trespass" is controlling. *See id.*

According to its common usage, the term "trespass" encompasses the property invasions alleged by the McDowells in Counts One, Two, and Three. These counts each allege that the defendants' actions interfered with the McDowells' exclusive possession of their property.[9] This description of the harm alleged fits the common usage of the term "trespass." *See Webster's II New Riverside University Dictionary* 1231–32 (1994) (defining trespass as an invasion of "property, rights, or person of another without his or her consent and with the actual or implied commission of violence, especially to enter onto another's land illegally"); *Black's Law Dictionary* 1502 (6th ed.1990) (defining trespass as "[a]n unlawful interference with one's person, property, or rights"). As noted above, we interpret the limitations statutes in terms of the nature of the injury rather than the technical cause of action. *See, e.g., Breck,* 910 P.2d at 603. According to the common usage of the word "trespass," AS 09.10.050(2) is not restricted to actions that allege technical trespass, but instead includes actions that allege an interference with the possessor's property rights.[10]

tions applies to the claim alleging injury to real property.

The limited nature of this holding should be recognized. Our decision goes only to the question of which statute of limitations applies. Although we hold that the McDowells' negligence and strict liability claims are subject to AS 09.10.050(2) because they sound in "trespass," the McDowells must still show the distinct elements necessary to prove their negligence, strict liability, and trespass claims on the merits. Because this case is before us on summary judgment, the parties have briefed only the statute of limitations issue. We are not being asked to decide whether contamination resulting from unintentional acts would satisfy the elements of a trespass claim. The battle over the appropriate statute of limitations need not be coextensive with a battle on the merits.

9. The counts allege that Tesoro and the Cooks failed to maintain their fuel lines and storage tanks so that they would not leak and damage the McDowells' property (Count One); that the State failed to conduct the remediation so as not to damage the McDowells' property (Count Two); and that Tesoro and the Cooks are strictly liable for the damages caused by the escape of the petroleum products (Count III).

Count II, which alleges that the State negligently failed to prevent the contamination from reaching the McDowells' property, is a trespass claim because the result of the State's omission was a physical invasion. Whether the State owed a duty to prevent the contamination from reaching the McDowells' property is a separate issue that does not resolve how the limitations issue must be decided. *See Restatement (Second) of Torts* ch. 7, at 276 (1965) (stating that " '[t]respass [ ] on land' ... includes not only entries on land resulting directly or indirectly from the actor's act, but also the presence on the land of a thing which it is the actor's duty to remove"); *see also River Valley Assoc. v. Consol. Rail,* 182 A.D.2d 974, 581 N.Y.S.2d 935 (N.Y.App.Div. 1992) (stating that property buyer had trespass action against a contractor hired to remove railroad ties from property; the contractor had oral license to store the ties by virtue of the previous owners' consent, but that license terminated when the plaintiff purchased property and notified contractor and railroad that it wanted the ties removed).

10. *Cf. Commonwealth, Dep't of Highways v. Ratliff,* 392 S.W.2d 913, 914 (Ky.1965) (holding that trespass limitations statute applies to actions for damages to real property and is not limited to a

Finally, other considerations support application of AS 09.10.050 rather than AS 09.10.070 to the McDowells' claims. First, the defense of the statute of limitations is a legitimate, but disfavored, defense. We therefore have expressed a policy of applying the longer of two limitations periods if two limitations statutes apply to a claim. *See, e.g., Lee Houston,* 806 P.2d at 855 ("[D]oubts as to which of two statutes is applicable in a given case should be resolved in favor of applying the statute containing the longer limitations period.").

Second, policy reasons support selection of a longer statute of limitations for actions alleging negligent injury to real property. For example, an action alleging economic injuries caused by negligent damage to real property is likely to involve "documentary evidence" which remains reliable after the passage of time.[11] These policy reasons support application of AS 09.10.050(2) to the McDowells' negligence and strict liability claims.

## IV. *CONCLUSION*

Because the first three counts of the McDowells' complaint expressly pled an invasion of property rights that would be a "trespass upon real property," those counts are subject to the six-year limitations period of AS 09.10.050(2). We therefore REVERSE the order granting summary judgment to the defendants, and REMAND with instructions to reinstate the McDowells' action with respect to those three counts.

technical trespass; stating that it is unlikely that the legislature intended to omit from the trespass statute suits for damages to real estate not sounding strictly in trespass).

11. As this court stated in *Lee Houston:*
> [Applying a longer statute of limitations] to claims ... involving economic loss is consistent with the primary purpose of the statutes of limitations. The statutes are intended to encourage prompt prosecution of claims and thus avoid injustices which may result from lost evidence, faded memories and disappearing witnesses. Actions ... involving economic loss are often based largely on documentary evidence[,] not unaided recollections which quickly grow stale. On the other hand, a shorter limitations period is consistent with the more evanescent nature of evidence which is frequently found in cases involving personal, reputational or dignitary injuries.

> *Lee Houston,* 806 P.2d at 855 (citations omitted); *see also Breck,* 910 P.2d at 603 (considering the economic or non-economic nature of the injury to determine statute of limitations).