*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ROBERT W. RUDE, ) | |
| HAROLD F. RUDOLPH, ) | |
| and BRENDA NICOLI, ) | |
| ) | Supreme Court Nos. S-14686/14775/14796 |
| Appellants/Cross-Appellees, ) | |
| ) | Superior Court No. 3AN-10-09493 CI |
| ) | |
| v. ) | O P I N I O N |
| ) | |
| ) | No. 6887 – April 11, 2014 |
| COOK INLET REGION, INC., ) | |
| ) | |
| Appellee/Cross-Appellant. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Fred W. Triem, Petersburg, for Appellants/Cross-Appellees. Jahna M. Lindemuth and Katherine E. Demarest, Dorsey & Whitney LLP, Anchorage, and William D. Temko, Munger, Tolles & Olson LLP, Los Angeles, California, for Appellee/Cross-Appellant.

Before: Fabe, Chief Justice, Winfree, Stowers, and Bolger, Justices. [Maassen, Justice, not participating]

BOLGER, Justice.

## I.     INTRODUCTION

Robert Rude and Harold Rudolph are shareholders and former directors of Cook Inlet Region, Inc. (CIRI).  They distributed a joint proxy solicitation in an attempt

to be elected to the CIRI board of directors at CIRI's 2010 annual meeting. Rude and Rudolph accumulated over one quarter of the total outstanding votes, but CIRI's Inspector of Election refused to allow them to cumulate their votes. Thus, their votes were split evenly between the two of them and neither was seated. We conclude that the language of this proxy form required the shareholders' votes to be equally distributed between Rude and Rudolph unless a shareholder indicated otherwise. We therefore affirm the superior court's decision granting summary judgment in favor of CIRI on this issue.

CIRI cross-appeals, arguing that the superior court should have awarded attorney's fees under Alaska Civil Rule 68, as well as sanctions against plaintiffs' counsel under Alaska Civil Rule 11. We conclude that the superior court was not required to order sanctions, but we remand for reconsideration of the attorney's fee award.

## II.    FACTS AND PROCEEDINGS

CIRI is an organization created under the Alaska Native Claims Settlement Act (ANCSA). CIRI is governed by a 15-member board of directors, with the directors serving staggered three-year terms; five directors are elected every June at the annual meeting. Since 1997, CIRI has rotated its annual meeting between three locations: Anchorage, Kenai, and Puyallup, Washington. The 2010 annual meeting was held in Puyallup. For each election, the board chooses a slate of five recommended candidates for whom it solicits proxies. Rude and Rudolph are CIRI shareholders and former directors. In 2010, neither Rude nor Rudolph was an incumbent director; they distributed a joint proxy statement calling themselves the "R&R Alliance" (R&R).

CIRI's 2010 election was coordinated and supervised by an Inspector of Election. On June 3, 2010, two days before the June 5 annual meeting, CIRI sent a letter to the Inspector, urging him to find that the R&R proxy did not give Rude and Rudolph

authority to cumulate the votes they received. Rudolph responded by sending his own letter to the Inspector. In it, he withdrew his candidacy and asked that he and Rude be allowed to cumulate all of the R&R proxy votes, which amounted to 27% of the total, in Rude's favor. The Inspector split the R&R votes evenly between Rude and Rudolph, and as a result neither was elected to the board.

Rude, Rudolph, and Brenda Nicoli, on behalf of herself as well as a putative class of CIRI shareholders,[1] filed claims against CIRI challenging, among other things, the result and fairness of the 2010 board election. They sought monetary damages as well as equitable relief. CIRI moved for summary judgment on all claims, which the superior court granted. The Shareholders now appeal the grant of summary judgment as to their election claims.

There is also some relevant prior history between these parties. CIRI sued Rude and others in Alaska Superior Court in 2008. There, Rude and his co-defendants raised several counterclaims that were similar to some of the claims they raise in this case. The superior court granted summary judgment to CIRI in the 2008 case and this court affirmed that decision in 2012.[2]

In 2009, Rude and Rudolph sent CIRI shareholders four mailers in an attempt to change certain stock alienability restrictions and to call a special meeting on six resolutions. In December 2009, CIRI sued Rude and Rudolph in federal court for making materially false and misleading statements in the four mailers and for breaching confidentiality obligations. Rude and Rudolph raised some of the same counterclaims that they had raised in the 2008 case, and the federal court found that their arguments were barred by res judicata.

---

[1]     We will refer to the appellants collectively as the "Shareholders."

[2]     *Rude v. Cook Inlet Region, Inc.*, 294 P.3d 76 (Alaska 2012).

## III. STANDARD OF REVIEW

"Summary judgment is proper if there is no genuine factual dispute and the moving party is entitled to judgment as a matter of law."[3] We review the superior court's grant of summary judgment de novo.[4] We resolve questions of mootness using our independent judgment.[5] The application of Rule 68 is a question of law that we review de novo.[6] The award of attorney's fees[7] and Rule 11 attorney sanctions[8] are generally reviewed for abuse of discretion.

## IV. DISCUSSION

### A. Mootness

"We refrain from deciding questions where the facts have rendered the legal issues moot. A claim is moot if it has lost its character as a present, live controversy."[9] The Shareholders raise several claims related to the fairness of the 2010 CIRI board election. CIRI argues that these issues are now moot because the five board members who were elected in 2010 have now finished their terms. The Shareholders respond that these issues are not moot because even though Rude cannot now serve during the 2010-2013 term, he should still be paid fees as if he had.

---

[3]  *Anderson v. Alyeska Pipeline Serv. Co.*, 234 P.3d 1282, 1286 (Alaska 2010).

[4]   *Id.*

[5]  *Ahtna Tene Nené v. State, Dep't of Fish & Game*, 288 P.3d 452, 457 (Alaska 2012).

[6]  *Anderson*, 234 P.3d at 1286.

[7]  *Id.*

[8]  *Enders v. Parker*, 125 P.3d 1027, 1031 (Alaska 2005).

[9]  *Ahtna Tene Nené*, 288 P.3d at 457 (internal quotation marks omitted).

Although the Shareholders have not previously raised this argument, it is a proper response to CIRI's mootness claim. The possibility of this compensation if the Shareholders prevail suggests that the controversy remains unsettled. In addition, there is a reasonable argument that these election fairness claims are capable of repetition and evading appellate review.[10] The policies that the Shareholders dispute, including the counting of proxies and the location of the annual meeting, apply on a recurring basis, and there is a reasonable potential that these claims will continually evade appellate review. In addition, we need to decide these claims in order to decide the issue of attorney's fees.[11]

**B.    The Cumulative Voting Issue**

The first claim in this appeal is that the election inspector unlawfully refused to allow Rude to cumulate votes under the proxy he held with Rudolph. In Alaska, a shareholder has the right to cumulate his votes unless the articles of incorporation provide otherwise.[12] For ANCSA corporations, there is a special regulation that provides: "If action is to be taken on the election of directors and if the shareholders have cumulative voting rights, a proxy may confer discretionary authority to cumulate votes."[13] This regulation implies that a proxy must explicitly "confer" the "discretionary authority to cumulate votes."

---

[10]    *See Rude v. Cook Inlet Region, Inc.*, 294 P.3d 76, 87 (Alaska 2012).

[11]    *Id.* at 88 ("[W]here the outcome of an otherwise moot claim may change the status of the prevailing party and thus an award of attorneys' fees, we reach the merits of that claim." (alterations and internal quotation marks omitted)).

[12]    AS 10.06.420(d).

[13]    3 Alaska Administrative Code (AAC) 08.335(g) (2013).

This implication is supported by a case from the Third Circuit Court of Appeals: "Whether a shareholder intends to authorize the proxyholder to cumulate votes for fewer than the authorized number of directors should be determined by examining the proxy form itself."[14] Delaware cases also support the proposition that the shareholder's intent should be determined from the language of the proxy.[15]

These authorities are consistent with the language of the election rules adopted by the CIRI Board of Directors. The CIRI election rules do not explicitly require a proxy to authorize cumulative voting, but state: "The plain words of the proxy shall control," and "[i]n general, the Inspector of Election shall not use evidence outside the proxy form itself." The election rules give examples of the interpretation of a board proxy that suggest that a shareholder's votes will be distributed equally among the candidates named on the proxy form "unless the shareholder unambiguously directs another allocation." Finally, the rules specifically provide: "In order to avoid misleading proxy solicitations, a candidate may not voluntarily withdraw his or her candidacy in order to make his or her votes available for another candidate."

The language of the R&R proxy was fairly clear: "If this proxy is signed and no specific direction is given, it will be voted for Robert W. Rude and Harold F. Rudolph." The proxy continued: "You may withhold authority to vote for one of [sic]

---

[14] *Heffner v. Union Nat'l Bank & Trust Co.*, 639 F.2d 1011, 1015 (3rd Cir. 1981).

[15] *N. Fork Bancorp., Inc. v. Toal*, 825 A.2d 860, 867-68 (Del. Ch. 2000) ("A proxy card is evidence of an agent's authority to vote shares owned by another. Therefore, to determine the extent of this grant of authority to the proxy holders, one must look to the language [of the proxy] to determine the nature and extent of the agency relationship created." (internal quotation marks and alterations omitted)); *Blasius Indus., Inc. v. Atlas Corp.*, 564 A.2d 651, 668 (Del. Ch. 1988) ("[T]he administrative need for expedition and certainty are such that judges of election . . . are not to inquire into [stockholders'] intention except as expressed on the face of the proxy . . . .").

more of the nominees named here by lining through or otherwise striking out the nominee's name." The language of the proxy thus suggested that the shareholder's votes would be equally distributed between the candidates unless otherwise indicated on the face of the proxy. Therefore, the election inspector properly voted the proxies equally for Rude and Rudolph.[16]

## C.    The Meeting Location Issue

The second claim in this appeal is that the Shareholders' participation at the 2010 annual meeting was unfairly curtailed because the meeting was held in Washington state. Under Alaska law, "[m]eetings of shareholders shall be held at a place inside or outside this state as provided in the bylaws."[17] The CIRI bylaws state: "Meetings of the shareholders shall be held at the principal office . . . or at such other place, either within or without the State of Alaska, as the Board of Directors may designate." This claim is thus controlled by the general rule that corporate directors must exercise their duties "in good faith, in a manner the director reasonably believes to be in the best interests of the corporation, and with the care, including reasonable inquiry, that an ordinarily prudent person in a like position would use under similar circumstances."[18]

In this case, there was a reasonable basis for the board's decision to hold its annual meeting in Washington state every third year. Approximately 38.5% of CIRI shareholders reside outside Alaska. The board could reasonably conclude that those shareholders would have greater potential access to a meeting held in Washington than

---

[16]    The Shareholders argue in passing that the election inspector did not have the power to decide not to allow Rude and Rudolph to cumulate votes. However, CIRI correctly points out that its bylaws give the inspector the power to determine "the validity and effect of proxies."

[17]    AS 10.06.405(a).

[18]    AS 10.06.450(b).

to a meeting held in Alaska.  The superior court properly granted summary judgment for CIRI on this issue because the directors made a reasonable decision to hold the 2010 annual meeting in Washington, a decision that was consistent with the corporate bylaws and the relevant statute.

### D.     The Remaining Election Fairness Claims

The Shareholders raise several additional election fairness claims.  They first argue that the board's proxy statement did not disclose that the election was contested and that CIRI improperly excluded the independent candidates' names from CIRI's proxy.  But we have previously held that the applicable regulations do not require the board to include independent candidates in the board's proxy statements.[19]

Rude and Rudolph also argue that CIRI's proxy did not allow voting on corporate resolutions submitted by independent candidates.[20]  In 2010, however, the federal court found that this argument had been rejected on the merits by the superior court in the 2008 case.  In the 2008 case, the superior court ruled that "CIRI did not have to include [the independent candidates'] proposed resolution in its proxy."  We thus conclude that this argument is barred by collateral estoppel, which precludes "the relitigation of issues actually determined in earlier proceedings."[21]

The Shareholders also argue that CIRI's proxy form did not provide a blank space in its proxy to allow voting for write-in candidates.  This claim is factually inaccurate because the board's proxy statement did have a blank line for write-in

---

[19]     *See Rude v. Cook Inlet Region, Inc.*, 294 P.3d 76, 89-90 (Alaska 2012); *Henrichs v. Chugach Alaska Corp.*, 260 P.3d 1036, 1044 (Alaska 2011).

[20]     Nicoli did not join in this claim.

[21]     *Latham v. Palin*, 251 P.3d 341, 344 (Alaska 2011) (alteration omitted).

candidates. We rejected this argument in the 2008 case,[22] and it was also disposed of previously in the federal case.

Finally, the Shareholders argue that CIRI unfairly required the independent candidates to pay for their own campaigns. We conclude that this claim is waived due to inadequate briefing.[23] It also appears that this claim was previously raised and decided in the 2008 case.[24]

### E.     Attorney's Fees

On January 5, 2011, CIRI made timely Alaska Civil Rule 68 offers of judgment to each of the Shareholders in the amount of $1,500, "in resolution of all claims" and "inclusive of all interest, attorney's fees, and costs." After judgment was entered in its favor, CIRI moved for attorney's fees under Civil Rules 68 and 82, and the superior court granted fees under Rule 82. The Shareholders appeal the Rule 82 fee award. CIRI cross-appeals the court's denial of Rule 68 fees. CIRI also moved for sanctions under Rule 11, but the superior court denied that motion. CIRI now cross-appeals that decision as well.

When the superior court denied CIRI's request for attorney's fees under Rule 68, it reasoned that the offers of judgment that CIRI made to the Shareholders "were too low." The court's order appears to be based on *Beal v. McGuire*[25] and *Anderson v. Alyeska Pipeline Service Co.*[26] In *Beal* this court held: "Even though a

---

[22]     *Rude*, 294 P.3d at 92-93.

[23]     *See A.H. v. W.P.*, 896 P.2d 240, 243-44 (Alaska 1995).

[24]     *Rude*, 294 P.3d at 82.

[25]     216 P.3d 1154 (Alaska 2009).

[26]     234 P.3d 1282 (Alaska 2010).

purpose of Rule 68 is to encourage settlement and avoid protracted litigation, offers of judgment made without any chance or expectation of eliciting acceptance or negotiation do not accomplish the purposes behind the rule."[27] We concluded that offers of judgment of one dollar each, where there were "potentially substantial damages," "could not be considered valid" for purposes of Rule 68.[28] Later, in *Anderson*, we applied the *Beal* analysis to a ten-dollar offer: "there was no objectively reasonable prospect that Anderson would accept ten dollars to settle her case — or that the offer would even start a dialogue that could lead to settlement — at that stage of the litigation."[29]

We conclude that the offers in this case of $1,500 for each plaintiff were not too low to satisfy these precedents. In this case, the Shareholders' claims were particularly weak. Many of the claims were barred by collateral estoppel, and the Shareholders had plenty of time to conduct discovery to assess their claims before the offers were made.

The Shareholders cite *Gold Country Estates Preservation Group, Inc. v. Fairbanks North Star Borough*[30] for the proposition that a Rule 68 money offer is not appropriate where the relief being sought is equitable. In that case, we noted "that a citizen litigant's claim alleging violation of the Open Meetings Act, with no accompanying claim for monetary damages, is unlikely to be an appropriate vehicle for a Rule 68 offer."[31] We reasoned that where there is no claim for monetary damages, "[a]

---

[27]     216 P.3d at 1178.

[28]     *Id.*

[29]     234 P.3d at 1289.

[30]     270 P.3d 787 (Alaska 2012).

[31]     *Id.* at 799.

Rule 68 offer of judgment serves no legitimate purpose."[32] Likewise, in *Fernandes v. Portwine*, this court rejected a Rule 68 offer of judgment which by its terms encompassed only the legal, and not the injunctive, claims made by the offeree.[33] We held the "offer of judgment was not comprehensive, definite and unconditional; it did not encompass any of the equitable claims."[34]

In this case, however, the Shareholders sought both monetary and equitable relief in their complaint. The plaintiffs' damage claims were substantial — their prayer for relief requested monetary damages for CIRI's allegedly unfair election practices, punitive damages, unpaid directors' fees for Rude and Rudolph totaling over $200,000, and a money award to the putative class from a common fund. So the $1,500 offers of judgment did serve the legitimate purpose of addressing the Shareholders' claim for damages. And CIRI's offers were clearly worded to end the litigation by covering all the claims, not just the damage claims. Thus, the fact that the Shareholders were also seeking equitable relief does not invalidate CIRI's offers.

We conclude that we should remand this case to allow the superior court to reconsider CIRI's motion for Rule 68 attorney's fees. In addition, the attorney's fees awarded to CIRI should be apportioned among the individual plaintiffs.[35]

When the superior court denied CIRI's motion for Rule 68 fees, the court referred to Nicoli's motion for class certification.[36] Some federal courts have opined that

---

[32] *Id.*

[33] 56 P.3d 1, 8-9 (Alaska 2002).

[34] *Id.* at 9.

[35] *See Mills v. Hankla*, 297 P.3d 158, 175 (Alaska 2013).

[36] This circumstance does not affect the offers made to Rude and Rudolph
(continued...)

when a defendant makes a Rule 68 offer to a class representative before certification, "the named plaintiff will . . . find his fiduciary obligations to the putative class members pitted against his own self-interest."[37] That is, the representative's personal interest in the offer conflicts with his obligation to the putative class, which has no other representative at that stage in the proceedings. Nicoli may renew this argument on remand.[38]

### F. Rule 11 Sanctions

The superior court denied CIRI's motion for Rule 11 sanctions against the shareholders' attorney, Fred Triem. CIRI argued in its sanctions motion that Triem violated Rule 11 by filing the initial complaint and several postjudgment motions. CIRI's argument is that the claims therein were clearly barred by collateral estoppel, and thus Triem was in violation of Rule 11's requirement that legal arguments not be frivolous. But CIRI concedes: "Even where Rule 11 has been violated, entry of

---

[36] (...continued)
because they did not assert any claim for class action relief.

[37] *McDowall v. Cogan*, 216 F.R.D. 46, 51 (E.D. N.Y. 2003); *see also Weiss v. Regal Collections*, 385 F.3d 337, 344 (3rd Cir. 2004) ("As sound as is Rule 68 when applied to individual plaintiffs, its application is strained when an offer of judgment is made to a class representative.").

[38] If the court decides that Rule 68 fees should not be awarded against Nicoli, then the Rule 82 award should be clarified to explain why the court awarded 30% rather than the usual 20% under the rule.

sanctions in a particular case is left to the superior court's discretion."[39]  We conclude the superior court's decision not to impose sanctions was within its discretion.[40]

## V.    CONCLUSION

We AFFIRM the superior court's grant of summary judgment to CIRI as to all claims.  We VACATE and REMAND the court's attorney's fee determination.  We AFFIRM the court's denial of Rule 11 sanctions.

---

[39]    *See* Alaska R. Civ. P. 95(b) ("[A] court may . . . impose a fine . . . against any attorney who practices before it for failure to comply with" the Alaska Civil Rules.).

[40]    *See Enders v. Parker*, 125 P.3d 1027, 1037 (Alaska 2005) (holding that because Rule 11 sanctions are not mandatory, trial court did not err in failing to impose them even where trial court made finding that party to be sanctioned lacked good faith).